

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

State Department of Education
Austin, Texas

Gentlemen:  Opinion No. O-1699
      Re: Constitutionality of
        House Bill 918, Forty-
        Seventh Legislature.

    In your letter of November 12, 1941, you
request our opinion as to the constitutionality of
House Bill 918, 47th Legislature, Secs. 1, 1a and
1b of which read as follows:

    "Section 1. In all counties in this
  State having a population of not less than
  fifty thousand, nine hundred and fifty
  (50,950) nor more than fifty-one thousand,
  one hundred (51,100), all counties having
  a population of not less than thirty-four
  thousand (34,000) nor more than thirty-five
  thousand (35,000), and all counties having
  a population of not less than twenty-nine
  thousand, two hundred and twenty-five (29,225)
  nor more than twenty-nine thousand, two hundred
  and forty (29,240), according to the last pre-
  ceding Federal Census, the County School
  Trustees shall hold meetings once each quarter
  on the first Monday in August, November, Feb-
  ruary, and May, or as soon thereafter as is
  practicable, or such meetings may be held on
  the first Monday in each month and at such other
  times when called by the President of the Board
  of County School Trustees or at the instance
  of any two (2) members of such Board and the
  County Superintendent.

    "The meeting place shall be at the county
  seat, and, if convenient, in the office of the

County Superintendent. Each Trustee shall be paid Four Dollars ($4) per day for the time spent in attending such meetings, not to exceed twenty-five (25) days in any one year, to be paid out of the State and County Available School Fund by warrant drawn on the order of the County Superintendent and signed by the President of the Board of County School Trustees, after approval of the account, properly sworn to by the President of the Board of County School Trustees.

"Sec.1a.  In all counties in this State having a population of not less than twenty-three thousand and five (23,005) nor more than twenty-three thousand, three hundred (23,300), according to the last available Federal Census as same now exists or may hereafter exist, the County School Trustees shall hold meetings once each month on the first Monday in each month, or as soon thereafter as practicable, or at such other times when called by the President of the Board of County School Trustees, or at the instance of any three (3) members of said Board and the County Superintendent; the meeting place to be at the county seat and in the office of the County Superintendent, or at such other place in the County Courthouse as may be designated by the President of said Board of County School Trustees. Each County School Trustee shall be paid Five Dollars ($5) per day for the time spent in attending such meetings, not to exceed fifteen (15) days in any one year. Such compensation shall be paid out of the school administration fund of each county by warrants drawn against such fund as the law now provides, after the approval of this Act.

"Sec. 1b.  In all counties in this State having a population of not less than thirty-one

thousand, eight hundred and thirty (31,830), nor more than thirty-two thousand, nine hundred and forty-one (32,941), according to the last available Federal Census as some now exists and may hereafter exist, the County School Trustees shall hold meetings once each month on the first Monday in each month, or as soon thereafter as practicable, or at such other times when called by the President of the Board of County School Trustees, or at the instance of any three (3) members of said Board and the County Superintendent; the meeting place to be at the county seat and in the office of the County Superintendent, or at such other place in the County Courthouse as may be designated by the President of said Board of County School Trustees. Each County School Trustee shall be paid Four Dollars ($4) per day for the time spent in attending such meeting, not to exceed eighteen (18) days in any one year. Such compensation shall be paid out of the school administration fund of each county by warrants drawn against such fund as the law now provides, after the approval of this Act."

Article 3, Sec. 56, State Constitution, forbids the passage of any local or special law "regulating the affairs of . . . school districts; . . . creating offices in . . . school districts." Holding certain bracket legislation invalid in Miller v. El Paso County, 150 S. W. (2) 1000, the Supreme Court said:

"Notwithstanding the above constitutional provision, the courts recognize in the Legislature a rather broad power to make classifications for legislative purposes and to enact laws for the regulation thereof, even though such legislation may be applicable only to a particular class or, in fact, affect only the inhabitants of a particular locality; but such legislation must be intended to apply uniformly to all who may come within the classification designated in the Act, and the classification must be broad enough to include a substantial class and must be based on characteristics legitimately distinguishing such class from

others with respect to the public purpose
sought to be accomplished by the proposed
legislation. In other words, there must
be a substantial reason for the classifica-
tion. It must not be a mere arbitrary device
resorted to for the purpose of giving what
is, in fact, a local law the appearance of a
general law."

Does the Act in question meet the test laid
down in the Miller v. El Paso Case? (See also Bexar
County v. Tynan, 97 S. W. (2) 467, 128 Tex. 223).

Note the respective populations of the following
counties according to the 1940 census: Bowie, 50,208;
Harrison, 50,900; Lamar, 50,425; Lubbock, 51,782; Navarro,
51,308; Rusk, 51,023; Cass, 33,496; Denton, 33,658; Falls,
35,984; Limestone, 33,781; Milam, 33,120; Nacogdoches,
35,392; Fayette, 29,246; Red River, 29,769; Shelby, 29,235;
Gray, 23,911; Jones, 23,378; Montgomery, 23,055; Victoria,
23,741; Panola, 22,513; Angelina, 32,201; Fort Bend, 32,963;
Henderson, 31,822; Houston, 31,137; Van Zandt, 31,155.

It will be seen that the 50,950 to 51,100
bracket applies only to Rusk County. We find no county
having a population of between 34,000 and 35,000 accord-
ing to the 1940 census. The 29,225 to 29,240 bracket
segregates Shelby County from all others. The 23,005
to 23,300 bracket selects Montgomery County alone while
the 31,830 to 32,941 bracket picks out Angelina County
alone. We are unable to find any reason whatsoever
for the so-called classification. Using Chief Justice
Alexander's words in Miller v. El Paso County, supra,
"whatever difference there is in population does not
appear to be material to the objects sought to be ac-
complished" by the proposed legislation.

It is our opinion that the Act in question con-
travenes Article 3, Section 56 of the State Constitution
and is, therefore, void.

APPROVED NOV 15, 1941

FIRST ASSISTANT
ATTORNEY GENERAL
GRL:BT

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis

Glenn R. Lewis
Assistant

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN